<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL LUPKOVICH, | : | **Hon. Freda L. Wolfson** |
| Petitioner, | : | Civil No. 04-5399 (FLW) |
| v. | : |  |
| RONALD H. CATHEL, et al., | : | **O P I N I O N** |
| Respondents. | : |  |

**APPEARANCES:**

    MICHAEL LUPKOVICH, #575551B
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey  08618
    Petitioner <u>pro se</u>

    ROBERT A. HONECKER, JR., ACTING MONMOUTH COUNTY PROSECUTOR
    MARK P. STALFORD, Acting Assistant Prosecutor
    Monmouth County Court House
    Freehold, New Jersey  07728-1789
    Attorneys for Respondents

<u>WOLFSON</u>, District Judge

    Michael Lupkovich filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a judgment of conviction in the Superior Court of New Jersey.  Respondents filed an Answer, arguing that the Petition should be dismissed on the merits.  For the reasons expressed below, the Court dismisses the Petition with prejudice and denies a certificate of appealability.  <u>See</u> 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction filed on July 30, 1997, in the Superior Court of New Jersey, Law Division, Monmouth County, after a jury convicted him of capital murder, aggravated manslaughter, possession of a handgun for an unlawful purpose and unlawful possession of a weapon.  The Law Division imposed an aggregate sentence of life imprisonment plus 35 years, with 47.5 years of parole ineligibility.  On May 1, 1998, the Appellate Division of the Superior Court of New Jersey granted Petitioner's motion for a limited remand to address whether he was entitled to a new trial based on a claim that the State had withheld exculpatory evidence.  After conducing remand hearings, the Law Division denied the motion for a new trial.

Petitioner filed a direct appeal.  In an opinion filed December 18, 2000, the Appellate Division of the Superior Court of New Jersey affirmed without discussion.  See State v. Lupkovich, No. A-0750-97T4 slip op. (N.J. Super., App. Div,. Dec. 18, 2000).  On March 27, 2001, the Supreme Court of New Jersey denied certification.  See State v. Lupkovich, 167 N.J. 637 (2001) (table).

On March 13, 2002, the Law Division filed Petitioner's pro se petition for post conviction relief.  On October 10, 2002, through counsel, Petitioner filed an amended petition.  After conducting an evidentiary hearing, the Law Division denied post conviction relief by Order filed October 25, 2002.  Petitioner appealed, and in an opinion filed May 3, 2004, the Appellate Division affirmed the order denying post conviction relief.  See State v. Lupkovich, No. A-2906-02T4 slip op. (N.J. Super., App. Div., May 3, 2004).  On September 10, 2004, the New Jersey Supreme Court denied certification.  See State v. Lupkovich, 181 N.J. 544 (2004) (table).

Petitioner executed the Petition which is now before this Court on November 1, 2004. The Clerk received it on November 3, 2004. This Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). Petitioner declined.

The Petition, which incorporates Petitioner's Memorandum in Support of Petition, sets forth the following grounds:

> Ground One: PETITIONER IS NOT TIME-BARRED UNDER 28 U.S.C. § 2244(d) FROM RAISING THE CLAIMS SET FORTH IN THE INSTANT PETITION FOR A WRIT OF HABEAS CORPUS FILED PURSUANT TO 28 U.S.C. § 2254.
>
> Ground Two: THE STATE COURT (A) ERRONEOUSLY PRECLUDED PETITIONER FROM PRESENTING EVIDENCE TO SHOW THAT CHESTER ANDERSON HAD A REPUTATION FOR BEING A VIOLENT PERSON; AND (B) THE STATE COURT ERRED WHEN PERMITTING THE STATE TO INTRODUCE EVIDENCE OF PETITIONER'S PRIOR DRUG DEALINGS.
>
> > (A) THE TRIAL COURT'S EVIDENTIARY RULING PRECLUDING PETITIONER FROM INTRODUCING CHARACTER TRAIT EVIDENCE TO SHOW THAT CHESTER ANDERSON HAD A REPUTATION FOR BEING VIOLENT IS ERRONEOUS AND DENIED PETITIONER A FAIR TRIAL.
> >
> > (B) THE TRIAL JUDGE ERRED IN PERMITTING THE STATE TO INTRODUCE EVIDENCE OF PETITIONER'S PRIOR DRUG DEALINGS.
>
> Ground Three: THE STATE COURT COMMITTED ERROR IN FAILING TO ISSUE AN ORDER COMPELLING WAYNE PARRY, A NEWSPAPER REPORTER, TO TESTIFY AT THE REMAND HEARING WITH RESPECT TO A STATEMENT MADE BY CHESTER ANDERSON IN HIS PRESENCE

>RELATING TO THE HARM HE WOULD HAVE INFLICTED ON PETITIONER.
>
>Ground Four:  THE STATE WITHHELD EVIDENCE THAT CHESTER ANDERSON HAD BEEN ARRESTED IN NEW YORK PRIOR TO HI[S] TAKING THE WITNESS STAND IN VIOLATION OF <u>BRADY</u>, AND THE STATE COURT SHOULD HAVE GRANTED PETITIONER A NEW TRIAL.
>
>Ground Five:  THE STATE COURT SHOULD HAVE DECLARED A MISTRIAL WHEN IT WAS DISCOVERED THAT MEMBERS OF THE JURY PANEL HAD LEARNED THAT ASSISTANT PROSECUTOR MELLACI HAD BEEN APPOINTED A SUPERIOR COURT JUDGE.
>
>Ground Six:  PETITIONER HAS EXHAUSTED EACH OF THE FOREGOING GROUNDS IN THE STATE APPELLATE AND SUPREME COURTS.
>
>Ground Seven:  TRIAL COUNSEL'S DECISION NOT TO CALL THREE WITNESSES TO THE STAND TO TESTIFY AT TRIAL WAS A MONUMENTAL ERROR THAT SEVERELY IMPAIRED THE DEFENSE AND DEPRIVED PETITIONER OF A FAIR TRIAL.

(Petitioner's Mem. at pp. 24, 27, 33, 37, 42, 46, 51, 56.)

The State filed an Answer and a Brief arguing that the Petition should be dismissed because none of the claims satisfies the standard for granting habeas relief.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

>[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[1] Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.[2] "[E]rrors of state law cannot be repackaged as federal errors simply

---

[1] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[2] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits"[3] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" a Supreme Court holding if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are

---

[3] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. Rompilla, 355 F.3d at 247.

materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4]  Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Statute of Limitations and Exhaustion

Petitioner argues in Ground One that the Petition is not barred by the one-year statute of limitations governing § 2254 petitions, and in Ground Six that the Petition should not be dismissed as unexhausted.  The State and this Court agree.

---

[4] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

B.  Evidentiary Rulings

In Ground Two(A), Petitioner asserts that the Law Division denied him due process by precluding Petitioner's counsel from cross-examining Chester Anderson, a prosecution witness, about Anderson's reputation for violence.  Petitioner argues that this evidentiary ruling prevented him from adequately presenting his defense that an unknown person, working under the direction of Chester Anderson, committed the murders.  The State argues that the evidentiary ruling was proper under the New Jersey Rules of Evidence, and that this issue does not present a constitutional claim.

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."  Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).  The admissibility of evidence is generally a question of state law which is not cognizable under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence").  To be sure, an accused has the right under the Due Process Clause "to confront the prosecution's witnesses for the purpose of challenging their testimony [and] the right to present his own witnesses to establish a defense."  Washington v. Texas, 388 U.S. 14, 19 (1967).  But "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  Taylor v. Illinois, 484 U.S. 400, 410 (1988).  Because the trial court's ruling limiting the cross-examination of Chester Anderson regarding his reputation for violence presents a question of state evidentiary law, it is not cognizable under § 2254.

Relying on Huddleston v. United States, 485 U.S. 681 (1988), in Ground Two(B), Petitioner asserts that the admission of evidence regarding Petitioner's prior illegal drug transactions severely prejudiced him and denied him a fair trial. Huddleston, which involved a federal criminal prosecution, presented the question whether Federal Rule of Evidence 404(b) ("Other crimes, wrongs, or acts") requires the district court to make a preliminary finding that the government has proved the "other act" by a preponderance of the evidence before submitting the evidence to the jury. Petitioner argues that the Law Division erred by admitting the evidence of his prior drug transactions without complying with the four-part test for admission of this evidence under Federal Rule of Evidence 404(b), as interpreted by Huddleston.

The issue in Petitioner's case involved the proper interpretation of Rule 404(b) of the New Jersey Rules of Evidence. This is an issue of state law, over which this Court lacks subject matter jurisdiction. See, e.g., Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").

Because Grounds Two (A) and (B) present issues of state law, the New Jersey courts' adjudication of these claims was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

C.  Failure to Compel Reporter to Testify

Petitioner argues in Ground Three that the Law Division "committed error in failing to issue an order compelling Wayne Parry, a newspaper reporter, to testify at the remand hearing

9

[on Petitioner's motion for a new trial] with respect to a statement made by Chester Anderson in his presence relating to the harm [Anderson] would have inflicted on Petitioner." (Petitioner's Mem. at p. 37.)  Petitioner states that the newspaper article included this statement made by Chester Anderson to Detective Campbell:  "Bro, if [Petitioner] stole $5,000 from me, I'd have somebody in jail kill his ass.  Five thousand to me is not chump change.  I know enough people in jail that would toss his ass." (Petitioner's Mem. at p. 38.)  Petitioner argues that, in light of the failure of Anderson and Detective Campbell, both of whom testified at the remand hearing, to recall this statement, the trial court erred by denying Petitioner's request to call Parry.  Specifically, Petitioner asserts:  "In this case, the statement that the Asbury Park Press attributed to Anderson . . . was material relevant to impeaching Anderson's credibility, showing Anderson's bias towards Petitioner, and establishing Petitioner's defense that Anderson arranged for an unknown individual to murder both Lisa Palm and Jordan Zimmer." (Id. at p. 41.)  The problem with this claim is that it does not assert a violation of the United States Constitution.  Thus, this Court lacks jurisdiction over the claim and habeas relief is not permitted on Ground Three.

D.  Brady Violation

     In Ground Four, Petitioner asserts that the state violated Brady v. Maryland, 373 U.S. 83 (1967), by failing to disclose to Petitioner that Chester Anderson, a prosecution witness, was arrested on burglary and drug possession charges in New York State a few months before he testified against Petitioner.  The government argues that habeas relief is not warranted on Ground Four because the state court found that New Jersey officials were not aware of Anderson's arrest and, therefore, they did not violate Brady by failing do disclose this information.

The prosecution in a criminal proceeding has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant, either because the evidence is exculpatory or because it can serve to impeach a key prosecution witness. See Kyles v. Whitley, 514 U.S. 419, 433 (1995); Giglio v. United States, 405 U.S. 150 (1972); Brady v. Maryland, 373 U.S. 83 (1967). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

In this case, the record reflects that the Law Division conducted a post-trial evidentiary hearing, on remand from the Appellate Division, regarding Petitioner's Brady claim. The Law Division heard testimony from various witnesses, including Chester Anderson and then Assistant Prosecutor Mellaci. The Law Division judge expressly found the following facts: Chester Anderson was a prosecution witness in May 1997; Anderson was arrested in New York on February 20, 1997, and indicted on June 6, 1997; on September 23, 1997, Anderson pled guilty to criminal possession of a controlled substance and was sentenced to a conditional discharge and fine; the Monmouth County Prosecutor's Office checked criminal records and updated same during the investigation and trial of Petitioner; Petitioner's criminal trial ended June 20, 1997; the information regarding Anderson's New York charges was not entered into the N.C.I.C. until

11

June 30, 1997; and "then Prosecutor Mellaci, now Judge Mellaci and Prosecutor Kenney had no knowledge of the New York arrest, indictment until after the completion of the Lupkovich trial." State v. Lupkovich, Indictment No. 0281-02-96 transcript of hearing at 83-19 to 83-22 (N.J. Super., Law Div., Nov. 24, 1998).  The Law Division judge reasoned that, because New Jersey officials were not aware of Anderson's New York charges until after Petitioner's trial was completed, the state did not suppress such evidence within the meaning of Brady.

Section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

The New Jersey courts found that state officials did not suppress the New York charges under Brady because they were not aware of the charges until after Petitioner's trial.  Under § 2254(e)(1), this Court must presume the New Jersey court's factual findings to be sound. Petitioner has not rebutted this presumption of correctness by clear and convincing evidence, and he has not established that the decision of the New Jersey courts was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  See

Shabazz v. Artuz, 336 F.3d 154 (2nd Cir. 2003) (holding that habeas petitioner did not present evidence sufficient to rebut presumption of correctness afforded state court factual findings in rejecting Brady claim regarding undisclosed promises of leniency to prosecution witness). Accordingly, Petitioner is not entitled to habeas relief on Ground Four.

E.  Partial Jury

In Ground Five, Petitioner argues that "the state court should have declared a mistrial when it was discovered that members of the jury panel had learned that assistant prosecutor Mellaci had been appointed a superior court judge." (Petitioner's Mem. at p. 46.)  As factual support, Petitioner asserts that, prior to the state's summation, one of the jurors read in the newspaper that Anthony Mellaci, Jr., one of the prosecutor in Petitioner's case, would be appointed a Superior Court judge.  Petitioner further states that the jurors discussed the article, the discussion came to the attention of the trial court, and the trial court instructed the jurors that Mr. Mellaci's judicial appointment should not have any bearing on its decision.  Petitioner asserts that "the jury's knowledge of the fact that Mr. Mellaci had been appointed a judgeship constitutes an intrusion of irregular influences into the jury deliberation, State v. Grant, 254 N.J. Super. 571, 583 (App. Div. 1992), which deprived Petitioner of his constitutional right to due process and a fair trial." (Petitioner's Mem. at p. 47.)  Petitioner further argues that the trial court's "curative instruction was totally insufficient as it could not ameliorate the prejudicial effects inherent in the information the jury obtained." (Id. at p. 49.)  The government maintains that due process did not require the trial court to sua sponte declare a mistrial because Mr. Mellaci's judicial appointment did not relate to the evidence and because the trial court neutralized any potential prejudicial effect by giving the jury a curative instruction.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. As the Supreme Court explained in <u>Irvin v. Dowd</u>, 366 U.S. 717 (1961),

> It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 (1807), "The theory of the law is that a juror who has formed an opinion cannot be impartial." <u>Reynolds v. united States</u>, 98 U.S. 145, 155, 25 L. Ed. 244.
>
>   It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. <u>Spies v. People of State of Illinois</u>, 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80; <u>Holt v. United States</u>, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; <u>Reynolds v. United States</u>, <u>supra</u>. . . . As stated in <u>Reynolds</u>, the test is "whether the nature and strength of the opinion formed are such as in law necessarily . . . raise the presumption of partiality. The question thus presented is one of mixed law and fact . . . The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside . . . . If a positive and decided opinion had been formed, he would have been incompetent even though it had not been expressed.

<u>Irvin</u>, 366 U.S. at 722-23.

In <u>Turner v. Louisiana</u>, 379 U.S. 466, 471-73 (1965), two deputy sheriffs served dual roles as prosecution witnesses and jury custodians, and the jury was in close and continual

association with the deputies, who ate with them, conversed with them, and did errands for them. The Court held that the prejudice inherent in that situation violated the defendant's due process right to a fair trial before an impartial jury. As the Court explained,

> 'In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors . . . . In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke a juror must be as 'indifferent as he stands unsworne.' Co.Litt. 155b. His verdict must be based upon the evidence developed at the trial. Cf. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies . . . . The requirement that a jury's verdict 'must be based upon the evidence developed at the trial' goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury . . . . In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel. What happened in this case operated to subvert these basic guarantees of trial by jury.

Turner, 379 U.S. at 471-473 (footnote, citations and internal quotation marks omitted).

The Turner Court recognized the prejudice inherent in the dual role of jury bailiff and key prosecution witness:

> It would have undermined the basic guarantees of trial by jury to permit this kind of association between jurors and two key prosecution witnesses . . . . But the role that Simmons and Rispone played as deputies made the association even more prejudicial. For the relationship was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial.

Turner, 379 U.S. at 474.

The "intrusion" jurisprudence was summarized in <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982):

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation.  Were that the rule, few trials wold be constitutionally acceptable . . . .  [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.  Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

<u>Id.</u>

In this case, Petitioner did not request a mistrial in the trial court.  Rather, after the trial judge conducted a voir dire, Petitioner agreed that a curative instruction was appropriate.  However, on direct appeal Petitioner argued that the trial judge violated Petitioner's rights by failing to sua sponte declare a mistrial.  The Appellate Division rejected Petitioner's claim without discussion.

This Court finds that the adjudication of Petitioner's biased jury claim by the New Jersey courts was not contrary to, or an unreasonable application of, <u>Irvin</u>, <u>Turner</u> and <u>Smith v. Phillips</u>.  Thus, Petitioner is not entitled to habeas relief on Ground Five.

F.  Ineffective Assistance of Counsel

In Ground Seven, Petitioner asserts that "trial counsel's decision not to call three witnesses to the stand to testify at trial was a monumental error that severely impaired the defense and deprived Petitioner of a fair trial." (Petitioner's Mem. at p. 56.)  Petitioner raised his ineffective assistance of counsel claim in his state petition for post conviction relief.  The Law Division conducted an evidentiary hearing and considered the testimony of Petitioner,

16

Petitioner's trial counsel, and Robert Mazzeo, one of the three potential witnesses.  The Law Division rejected Petitioner's ineffective assistance of counsel claim as follows:

> In the present case, defendant has made no showing that trial counsel failed to investigate any reliable sources of evidence. During the hearings conducted by this Court . . . Mr. Bertucio [defense counsel] testified that a defense investigator, Mr. Irwin Beaver of the Beaver Detective Agency interviewed Beverly Savi and Robert Mazzeo and made diligent attempts to find William Walsh, checking with his mother, checking with other family members, running license plates; thus, contrary to defendant's contention, his trial attorneys investigated these witnesses and as indicated by the testimony, made reasonable calculated decisions regarding not calling Savi and Mazzeo.
>
> With regard to Beverly Savi, Mr. Bertucio testified that the decision not to call Mrs. Savi was a trial decision, a strategic one. Specifically, Mr. Bertucio stated that Mrs. Savi's statements did not fit the defense theory of the case, i.e., that an unidentified person returning from the area known as the pit committed the homicide[s] . . . .  Mr. Bertucio testified that defense counsel believed that Mrs. Savi's statements were inconsistent with defendant's version of events and wold have impeached defendant's [testimony] and undermined his story . . . .  Mr. Bertucio, evaluating the pros and cons of calling Mrs. Savi and making a determination that it was in the best interest of his client not to call this witness .
>
> As to Robert Mazzeo defendant also asserts that counsel was ineffective based on trial counsel's failure to call Robert Mazzeo . . . .  Mazzeo had been interviewed by Beaver and Bertucio and they concluded he was not credible nor was he particularly cooperative. Bertucio and Hobie [co-counsel] felt that in a high stakes death penalty murder trial it would be a bad gamble to call Mazzeo. They were concerned about his testimony as to whether one or two people were in the car when palm was picked up prior to the shooting.  They didn't want to call him as their witness and have his testimony explode in their face.  In his testimony before this Court, Mazzeo was not certain he saw two people in the car and didn't know whether  one or two people were in the car.  He wasn't sure whether he was looking at the back of a seat . . . .  There was a decision based upon their review of not only his demeanor, their

assessment of his credibility. How he would come across as a witness. How he would compare to the State's witnesses. There was a decision made by the defense, again with input from Mr. Lupkovich, that they would not call this particular witness.

   Now, as to William Walsh . . . . Initially, Mr. Walsh approached Detective Samuels of the crime scene and made some statements concerning the incident and that he could identify individuals who did the shooting. When this information was turned over to the defense in the initial discovery, several attempts were made to contact and interview Mr. Walsh through the Beaver Detective Agency. All of the attempts were unsuccessful. No one could locate him. Nobody could find him. Contrary to defendant's assertions, trial counsel worked diligently trying to find Mr. Walsh but their efforts were futile. The State couldn't find him either. In any event, Mr. Bertucio testified that the statement Mr. Walsh gave to the detective at the crime scene was very similar to Beverly Savi's statement. And, again, neither Beverly Savi or Robert Mazzeo witnessed the crime. Mazzeo was a witness that perhaps had information leading up to it. Savi didn't really witness, she heard some things afterwards from inside her apartment; and Bertucio indicated, as far as Walsh, that his version of the events was also contrary to the defendant's version. Thus, it is reasonable to conclude that if Mr. Walsh had been found and interviewed, defendant's trial counsel would have made the same trial decision that was made regarding Mrs. Savi . . . .it is quite clear that the strategy of defendant's trial counsel was preceded by thorough investigation of the law and the facts, through personal consultation with defendant and independent sources, Beaver Detective Agency who they had working form him, and consideration of all the possible options. As such, considering all of the circumstances, trial counsel's performance was more than reasonable, more than competent. Defendant, therefore, has not satisfied the first prong of the Strickland-Fritz test.

   Moreover, even if the Court concluded otherwise, which the Court doesn't even come close to doing, defendant would not meet the second prong. Defendant has failed to show that the testimony of either Mrs. Savi, Mr. Mazzeo or Mr. Walsh would have changed the result of this proceeding. As the Court has indicated on a number of occasions, there was strong evidence leading to the conviction of this defendant, both through the testimony of witnesses who identified him, confessions made and admissions

> made by the defendant along the way, together with the physical
> evidence that corroborated those types of admissions and
> eyewitness testimony . . .

State v. Lupkovich, Indictment No. 96-02-0281 transcript of decision at pp. 6-24 to 12-13 (N.J. Super., Law Div., Oct. 25, 2002).

The Appellate Division affirmed on the following basis:

> We are satisfied that defendant has not established the first
> Strickland prerequisite of showing ineffective assistance of counsel
> and that Judge Chaiet properly denied his PCR application. For
> example, the allegedly helpful evidence that these witnesses would
> provide in fact was properly dispensed with by trial counsel. There
> was very strong evidence of defendant's guilt, not the least of
> which included his repeated admissions of guilt to a number of
> people, as well as his having laid a trail of evidence, such as
> discarded gun parts, when he tried to get rid of it after the crimes.
> Savi's testimony would have been inconsistent with defendant's
> theory of the case. Walsh could never be located. In the
> circumstances it was hardly improper not to call either witness.
>
> With respect to Robert Mazzeo, trial counsel also was not
> deficient in not calling that witness to the stand. Indeed, the
> decision was made only after counsel had personally spoken to
> Mazzeo during the trial and the investigator had interviewed him
> as well. This decision was reached after conferring with defendant
> and was a reasonable strategy decision under the facts before us.

State v. Lupkovich, No. A-2906-02T4 slip op. at pp. 4-5 (N.J. Super., App. Div., May 3, 2004).

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984).

19

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id. Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim because he has not shown that the adjudication of the claim by the New Jersey courts was contrary to, or involved an unreasonable application of, Strickland and its progeny.

G.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). See Miller-El v. Cockrell, 537 U.S. 322 (2003).

### IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253©).

    s/Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**

DATED:   November 13, 2006